UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRITTANY NICOLE CHIPMAN,

                    Petitioner,

        v.

UNITED STATES OF AMERICA,

                    Respondent.

CASE NO. 3:22-cv-05519-BHS

ORDER DENYING PETITIONER'S
MOTION TO VACATE

        This matter comes before the Court on Petitioner Brittany Nicole Chipman's

Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Dkt. 1. The

Court has considered the briefing filed in support of and in opposition to the motion and

the remainder of the file and denies the motion for the reasons stated below.

## I.    BACKGROUND

        In March 2020, Chipman pled guilty to one count of Conspiracy to Distribute

Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c), and 846

(Count 1), and one count of Possession of a Firearm in Furtherance of a Drug Trafficking

Crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 4). *United States v. Gallagher, et

al.*, No. 19-5389 BHS, Dkts. 67, 68. She was charged with the underlying drug and

firearm offenses after Drug Enforcement Administration agents searched the home she

shared with her co-conspirator, Jaymes Arthur Gallagher, and recovered 6,000 MDMA[1]

pills, about $76,000, 1.25 pounds of cocaine, 23.25 pounds of methamphetamine,

marijuana growing equipment, a digital scale, and plastic baggies. Dkt. 5 at 3. The agents

also recovered a loaded pistol[2] from Chipman's purse. *Id.*

In her plea agreement, Chipman agreed that she "carr[ied] the firearm for

protection when [she] and Gallagher conducted their drug transactions" and that she

"possessed the loaded Glock 43X 9mm semi-automatic pistol . . . in furtherance of the

drug trafficking crime" charged in Count 1. *Gallagher*, Dkt. 67 at 7. She also waived her

right to appeal, including her right to assert a collateral attack. *Id.* at 11–12.

At her change of plea hearing, Chipman similarly agreed that she was waiving her

right to appeal or collaterally attack her sentence. Dkt. 5-1 at 15:20–17:2. She also agreed

that she carried her loaded pistol "for protection when [she] and Gallagher conducted

their drug transactions" and that she possessed the firearm "in furtherance of the drug

trafficking crime of Conspiracy to Distribute Controlled Substances charged in Count

One." *Id.* at 9:12–14, 10:5–12, 10:21–23.

Chipman also made some concerning comments during her change of plea and

sentencing hearings. When Magistrate Judge Fricke asked whether there was anything

about her condition that would make it difficult to concentrate or understand what was

---

[1] Methylenedioxy-methamphetamine.

[2] The agents found additional firearms in the home, but Chipman's firearm offense relates only to the pistol found in her purse. *See Gallagher*, Dkt. 67 at 2, 6–7.

happening, Chipman answered: "Mental illness." *Id.* at 12:21. She explained that she has "severe anxiety and lots of other issues," but stated that it was not affecting her ability to understand what was happening in court. *Id.* at 12:23–13:2. At sentencing, when given a chance to speak, Chipman stated:

> There are a lot of situational things that I would say contribute to what had happened. I mean, we're being punished for owning guns. I mean, it's our Second Amendment right. And we obtained every single gun legally. They were registered. *And they were not used in any kind of crime, or anything like that. My gun was to protect myself, and my children, if anything ever happened to us.*

Dkt. 5-2 at 11:20–12:1 (emphasis added). Judge Leighton[3] clarified with Chipman, however, that she was not intending to change her position in her plea agreement. *Id.* at 12:5–16, 12:25–13:5, 13:20–14:2. Ultimately, Chipman admitted to possessing a loaded firearm "to protect [herself] and the controlled substances that [she] and Mr. Gallagher possessed, in furtherance of the" drug trafficking crime. *Id.* at 14:14–20.

This Court sentenced Chipman on August 4, 2021, to six months imprisonment for Count 1, and sixty months imprisonment for Count 4, to be served consecutively for a total of sixty-six months, followed by four years of supervised release. *Gallagher*, Dkt. 115. Chipman's judgment was amended twice for clerical errors, on August 10, 2021 and September 7, 2021. She did not file a direct appeal and thus her conviction became final on September 21, 2021. Fed. R. App. P. 4(b)(1)(A)(i).

---

[3] Chipman's criminal case was transferred to this Judge when Judge Leighton retired from the federal bench. *Gallagher*, Dkt. 87.

1    Chipman now moves to vacate her sentence, arguing that her judgment was

2    impaired at the time she entered into her plea agreement because she was suffering from

3    a mental health disorder without treatment, that her attorney made false representations to

4    her regarding her potential sentence and the viability of a defense, that her purse and

5    firearm were not located with drugs or money in this case, and that neither she nor her

6    purse were ever linked to any drug trafficking activity. Dkts. 1, 2.

7    The Government argues that Chipman's guilty plea and the collateral review

8    waiver in her plea agreement bar her actual innocence claim. Dkt. 5 at 6–11. It further

9    argues that Chipman's innocence claim is procedurally defaulted because she did not

10   raise it at trial or on direct appeal, and that the claim is meritless given her prior

11   admissions. *Id.* at 11–13. The Government also argues that her ineffective assistance of

12   counsel claim fails because her counsel adequately informed her of the law and her

13   options of pleading guilty versus proceeding to trial. *Id.* at 13–15. Finally, the

14   Government argues that Chipman's challenge to the voluntariness of her guilty plea is

15   barred by her guilty plea, is procedurally defaulted because it was not raised on appeal or

16   before judgment, and is meritless because she has already been deemed, and admitted to

17   being, competent. *Id.* at 16–18.

18   Chipman replies that her counsel was ineffective because her counsel did not

19   explain the consequences of a § 924(c) conviction, did not investigate or research the

20   case, and convinced Chipman that she had "no option other than to accept the [plea]

21   agreement." Dkt. 6. She argues that she cannot currently access many documents needed

22   to support her case and to respond to the Government's assertions. *Id.* She also reiterates

that she could not understand everything that went on leading up to her plea because of her mental health, and that her purse, her pistol, and she were not involved in the controlled buys and that she never had her pistol during drug sales. *Id.* Finally, she argues that, to the extent she agreed to any statements by saying "yes" at her plea hearing or otherwise, she did not fully understand or appreciate what she was agreeing to. *Id.* She also asks the Court to appoint her an attorney. *Id.*

## II. DISCUSSION

Under § 2255, the Court may grant relief to a federal prisoner who challenges the imposition or length of her incarceration on the ground that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

An inmate filing a claim for federal habeas relief is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Ninth Circuit has characterized this standard as requiring an evidentiary hearing when "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir. 1984)).

Chipman brings this motion pro se, arguing that she is actually innocent, that her plea was involuntary, and that her counsel's representation was ineffective. Dkt. 2.

1    To prevail on her § 2255 motion, Chipman must show by a preponderance of the

2    evidence the existence of an error rendering her conviction unlawful. *Simmons v.*

3    *Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997); *see also Lee v. United States*, 468 F.2d 906,

4    906–07 (1972). Regarding a conviction by guilty plea, generally, a defendant who pleads

5    guilty and challenges her conviction under § 2255 may challenge only the knowing and

6    voluntary nature of the plea. *United States v. Kacsynski*, 239 F.3d 1108, 1113–1114 (9th

7    Cir. 2001) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Because a guilty plea

8    must be the result of an intelligent choice made with "full awareness of the relevant

9    circumstances," *Brady v. United States*, 397 U.S. 742, 755 (1970), an involuntary guilty

10   plea is an error sufficient to render a conviction unlawful, *Brown v. Salazar*, 431 F.

11   App'x 579, 579 (9th Cir. 2011).

12   A plea agreement is contractual in nature, *United States v. Alcala-Sanchez*, 666

13   F.3d 571, 575 (9th Cir. 2012), and the parties are held to the literal terms of the

14   agreement, *United States v. Benchimol*, 471 U.S. 453, 455 (1985). When construing a

15   plea agreement, the Court must determine what the defendant reasonably believed to be

16   the terms of the agreement at the time of the plea. *United States v. Franco-Lopez*, 312

17   F.2d 984, 989 (9th Cir. 2002). "The fact that [defendant] did not foresee the specific

18   issue that he now seeks to [review] does not place that issue outside the scope of his

19   waiver." *United States v. Johnson*, 67 F.3d 200, 203 (9th Cir. 1995). When a defendant

20   negotiates and enters into a plea agreement, the Ninth Circuit has enforced a defendant's

21   waiver of the right to collateral attack. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th

22   Cir. 1993).

1    Further, the Ninth Circuit has expressed agreement with other circuits that a

2 petitioner's collateral challenge resting on allegations that directly contradict the

3 petitioner's plea statements ordinarily must fail. *Muth v. Fondren*, 676 F.3d 815, 821 (9th

4 Cir. 2012); *see also United States v. Lemaster*, 403 F.3d 216, 220–21 (4th Cir. 2005)

5 ("[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that

6 directly contradict the petitioner's sworn statements made during a properly conducted

7 Rule 11 colloquy are always palpably incredible and patently frivolous or false.").

8    Chipman appears to raise three separate grounds why her plea agreement was not

9 knowing and voluntary. First, she argues that she "was not under the care of any mental

10 health provider" and that she "was suffering from a mental health disorder at the time"

11 she signed her plea agreement. Dkt. 2 at 1. She asserts that this impaired her judgment.

12 *Id.* Second, Chipman argues that her lawyer told her that she "had no option other than to

13 accept the [plea] agreement" and that her counsel was otherwise ineffective. Dkt. 6 at 1.

14 Third, she argues that she is actually innocent of the § 924(c) charge. *Id.*

15    The Government argues that Chipman's guilty plea and the collateral review

16 waiver in her plea agreement bar her innocence and voluntariness claims, but it concedes

17 that her ineffective assistance of counsel claim is not waived. Dkt. 5 at 6–11, 16. The

18 Government also argues that Chipman's innocence and voluntariness claims are

19 procedurally defaulted. *Id.* at 11–13, 16–17. Finally, it argues that all three of Chipman's

20 claims fail on the merits. *Id.* at 11–15, 17–18.

21

22

**A.    Appointment of Counsel**

In her reply, Chipman asks the Court to appoint her counsel to help her challenge her conviction and to help her access documents needed to support her claims. Dkt. 6.

No constitutional right to counsel exists for an indigent plaintiff in a civil case unless the plaintiff may lose his physical liberty if he loses the litigation. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). In relation to a § 2255 petition, the court may appoint counsel. 28 U.S.C. § 2255(g). Appointment of counsel is appropriate for "any financially eligible person who . . . is seeking relief under [§ 2255]" if "the court determines that the interests of justice" require such appointment. 28 U.S.C. § 3006A(a)(2)(B).

The interests of justice do not warrant appointment of counsel in this case. Chipman has not presented a legitimate challenge to her conviction, as discussed in detail below. Therefore, Chipman's motion for appointment of counsel is DENIED.

**B.    Actual Innocence**

Chipman's first argument is that she is actually innocent of the § 924(c) charge because she purchased her gun legally to protect her family and herself and not for any drug related purpose, the gun and her purse were not located with the drugs or money at issue in this case, and she was not present at either of the controlled buys and thus neither were her purse and gun. Dkt. 2 at 1; Dkt. 6 at 1.

The Government argues that Chipman's actual innocence claim is waived by her guilty plea and the collateral review waiver in her plea agreement. First, the Government argues that, because Chipman admitted she was guilty of the § 924(c) charge in open

1    court, she can only "attack the voluntary and intelligent character of the guilty plea by

2    showing that the advice [s]he received from counsel was not within the standards[]

3    required by the Constitution." *Id.* at 6. Second, the Government argues that Chipman

4    waived her right to collaterally attack her conviction in her plea agreement and that

5    waiver stands with respect to her innocence claim because she does not raise any

6    concerns about the propriety of the plea agreement. *Id.* at 8. Chipman does not directly

7    respond to the Government's arguments regarding waiver of her innocence claim. *See*

8    *generally* Dkt. 6.

9         Chipman waived her right to collaterally attack her sentence on innocence grounds

10   and she does not present a reason why the Court should not enforce that waiver.

11   Chipman's actual innocence claim is waived as a matter of law.

12        The Government also argues that Chipman's actual innocence claim is

13   procedurally defaulted because she failed to raise it before the entry of judgment or on

14   direct appeal. Dkt. 5 at 11–13. "[F]or federal and state convictions, habeas review is not

15   to substitute for an appeal." *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir.

16   2007). "Where a defendant has procedurally defaulted a claim by failing to raise it on

17   direct review, the claim may be raised in habeas only if the defendant can first

18   demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"

19   *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

20        Chipman did not raise her § 924(c) argument prior to pleading guilty or on direct

21   appeal. Thus, Chipman must either demonstrate cause and actual prejudice for failing to

22   previously raise her claim or show actual innocence.

1   "'Actual innocence' means factual innocence, not mere legal insufficiency." *Id.* at

2   623. Chipman claims that she never used her firearms in furtherance of her drug

3   trafficking crime; she asserts that she was not present for the drug buys and therefore

4   neither were her firearms, and that the firearms were purchased only to protect herself

5   and her family. Dkt. 6 at 1. The Government argues that Chipman possessed the firearms

6   in furtherance of her drug trafficking crime and that she admitted to as much in her plea

7   agreement, at her change of plea hearing, and at sentencing. Dkt. 5 at 12.

8   The evidence before the Court strongly suggests that there was sufficient evidence

9   to convict Chipman under § 924(c). "[S]ufficient evidence supports a conviction under

10  § 924(c) when facts in evidence reveal a nexus between the guns discovered and the

11  underlying offense." *United States v. Krouse*, 370 F.3d 965, 968 (9th Cir. 2004). The

12  Ninth Circuit has supported the idea that the simple "possession of a firearm on the same

13  premises as a drug transaction would not, without a showing of a connection between the

14  two, sustain a § 924(c) conviction." *Krouse*, 370 F.3d at 968 (parenthetically quoting

15  *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)). Nevertheless, the necessary

16  "nexus" can be shown where the firearms are "strategically located within easy reach in a

17  room containing a substantial quantity of drugs and drug trafficking paraphernalia." *Id.*

18  Chipman was carrying a loaded pistol in her purse. While she now asserts that she

19  did not carry the firearm in furtherance of drug trafficking, she made statements at the

20  time of her arrest that she carried the firearm for protection during drug transactions. *See*

21  Dkt. 5 at 3 (citing *Gallagher*, Dkt. 99, ¶ 9); *see also Gallagher*, Dkt. 67 at 7 ("Defendant

22  admitted to carrying the firearm for protection when Defendant and Gallagher conducted

their drug transactions."). Although it may be accurate that she was not physically present for the two controlled buys, she pleaded guilty to being involved in a drug trafficking conspiracy between July and September 2019, admitted that she used the firearm for protection during drug transactions, and provides no persuasive reason why the Court should disregard those previous admissions. Her claim that she legally purchased the firearms to protect her family does not necessarily contradict those prior statements.

Chipman also affirmed in her plea agreement and at her change of plea hearing that she was guilty of the § 924(c) charge, that she possessed firearms in furtherance of her drug trafficking crime, and that she understood she was waiving her right to collaterally attack her sentence. Dkt. 5-1 at 8–12, 16–18; *see also Gallagher*, Dkt. 67, ¶¶ 6, 9, 17. While Chipman made some statements at her sentencing hearing that raised questions about the accuracy of the plea agreement, she was questioned about those statements carefully and ultimately agreed that she did, in fact, possess the firearm in furtherance of her drug trafficking crime. Dkt. 5-2 at 11:24–25, 12:5–16, 12:25–13:5, 13:20–23, 14:14–20. In fact, Judge Leighton's questioning of Chipman at her sentencing hearing provides a strong and clear affirmation of her gun possession charge. *See, e.g.*, Dkt. 5-2 at 14:14–20 (Chipman confirming that it was "unfortunately . . . true" that she "possess[ed] [her] firearm, to protect [herself] and the controlled substances that [she] and Mr. Gallagher possessed, in furtherance of the" drug trafficking crime).

Moreover, her actual innocence claim is meritless and is therefore procedurally defaulted. She has repeatedly admitted to possessing the firearm at issue in furtherance of drug trafficking, even when repeatedly questioned about it at sentencing.

1    Chipman's actual innocence claim is therefore DENIED.

2    **C.    Voluntariness**

3        Chipman argues that her plea was not voluntary because she "was not under the

4    care of any mental health provider" and she "was suffering from a mental health disorder

5    at the time" she signed her plea agreement. Dkt. 2 at 1. She asserts that this impaired her

6    judgment. *Id.*

7        The Government argues that Chipman's voluntariness claim is barred by her guilty

8    plea, procedurally defaulted, and meritless. Dkt. 5 at 16–18. First, it argues that, because

9    Chipman fails to show that her trial counsel was ineffective, her voluntariness argument

10   is barred by *Tollett*. *Id.* at 16. Second, the Government argues that Chipman's

11   voluntariness argument is procedurally defaulted because it was not raised before entry of

12   judgment or on direct appeal, she cannot show she is actually innocent, and it could have

13   been raised previously since it was factually developed at the time. *Id.* at 16–17. Third,

14   the Government argues that Chipman's voluntariness argument is meritless because she

15   told Judge Fricke at her change of plea hearing that her mental health issues did not affect

16   her ability to understand the proceedings or her plea agreement. *Id.* at 17. The

17   Government points out that Chipman failed to produce any mental health records, and

18   that the mental health records produced at the time she entered her plea reflect that

19   "[t]here [were] no indications that Miss Chipman [was] not competent to manage her

20   affairs." *Id.* at 17–18.

21       Chipman argues that her "mental health didn't mean [she] was incompetent, it

22   meant that [she] could not adequately comprehend everything that [her] attorney was

1    attempting to explain." Dkt. 6 at 1. She explains that she "did not have the wherewithal to

2    stand up to her [attorney] and insist that a proper investigation and research be completed

3    on the 924(c) charge" and that her "mental health ([her] extreme depression) allowed

4    [her] to simply do what [she] was told by [her] attorney without insisting upon certain

5    precautions." *Id.* (footnote omitted).

6         First, as to counsel's performance, Chipman fails to show "the advice [s]he

7    received from counsel was not within the standards set forth in [*Strickland v.*

8    *Washington*, 466 U.S. 668 (1984)]." *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985).

9    Nothing presented suggests that counsel's performance was deficient or her advice

10   inadequate. This issue is discussed in further detail below in relation to Chipman's

11   ineffective assistance of counsel claim.

12        Second, as to procedural default, it is undisputed that Chipman failed to raise her

13   voluntariness argument either before judgment or on direct appeal. Further, she has not

14   shown she is actually innocent, or that she could not have raised this argument

15   previously. Chipman confirmed at her change of plea hearing that although she suffered

16   from "severe anxiety and lots of other issues," this did not affect her ability to understand

17   the proceedings or her plea agreement. Dkt. 5-1 at 12:16–13:10. In her reply, Chipman

18   explains that her mental health issues were present during the pendency of her case. *See*

19   Dkt. 6 at 2. She asserts that she was suicidal throughout the case and that she saw mental

20   health providers at that time. *Id.* This confirms that Chipman was aware of her own

21   mental health issues and that she could have previously raised a voluntariness argument.

22

1    Third, as to the merits of Chipman's voluntariness claim, the Court agrees with the

2    Government that there are no facts to suggest that Chipman was unable to understand the

3    plea agreement or proceedings. She agreed that she understood what was going on, had

4    competent counsel to guide her, and was being treated by mental health professionals

5    who confirmed that she was competent at the time.

6    Chipman's claim based on voluntariness is therefore DENIED.

7    **D.    Ineffective Assistance of Counsel**

8    Chipman asserts three ineffective assistance of counsel arguments: (1) "[f]ailure to

9    investigate and research the 924(c) charge"; (2) "[r]efusal to listen or assist in challenging

10   a conviction under 924(c)"; and (3) "[m]isinformed me about plea negotiations and

11   potential sentencing consequences."[4] Dkt. 1 at 5. Her "failure to investigate" argument

12   seems to be focused on counsel's failure to identify a circuit split involving § 924(c). *See*

13   *id.* (citing *United States v. Garcia*, 447 F.3d 1327 (11th Cir. 2006); *United States v. Rios*,

14   449 F.3d 1009 (9th Cir. 2006)). In contrast, her "refusal to listen" argument seems to be

15   focused on counsel's failure to consider Chipman's argument that her gun and purse were

16   not linked to drug trafficking. *See* Dkt. 6 at 1.

17   The Government argues that the circuit split involving § 924(c) does not apply to

18   Chipman's case because her predicate conviction was a drug trafficking crime, not a

19   crime of violence. Dkt. 5 at 13–14. It next argues that Chipman's counsel was not

20

21   _____
      [4] Chipman's petition actually asserts four arguments, but her third argument states: "The

22   facts in this case do not meet the elements required under 924(c)." Dkt. 1 at 5. The Court reads
      this as part of her argument that counsel failed investigate and research her § 924(c) charge.

ORDER - 14

1    ineffective for recommending that she plead guilty given that Chipman confessed to her

2    crimes. *Id.* at 14. Finally, it argues that Chipman's counsel accurately explained the plea

3    agreement and sentencing consequences to her. *Id.* at 14–15.

4          The Sixth Amendment guarantees a criminal defendant the right to effective

5    assistance of counsel. *Strickland*, 466 U.S. at 687. The Court evaluates ineffective

6    assistance of counsel claims under the two-prong test set forth in *Strickland.* To prevail

7    under *Strickland*, a defendant must prove that (1) his counsel's performance was

8    deficient, and (2) this deficient performance was prejudicial. *Id.* The Court must apply a

9    "strong presumption that counsel's conduct falls within the wide range of reasonable

10   professional assistance." *Id.* at 689. The attorney's performance is evaluated from

11   counsel's perspective at the time. *Id.*

12         In *Hill v. Lockhart*, the Supreme Court confirmed that the *Strickland* test governs

13   challenges to guilty pleas that are based on a claim of ineffective assistance of counsel.

14   474 U.S. at 58–59. A defendant who pleads guilty upon the advice of counsel may attack

15   the voluntary nature of the guilty plea only by showing that the advice he received from

16   counsel to enter the plea was ineffective. *Id.* at 56–57 (citing *Tollet*, 411 U.S. at 267). An

17   attorney's advice to enter a plea is ineffective if it falls below "the range of competence

18   demanded of attorneys in criminal cases." *Id.* at 56 (quoting *McMann v. Richardson*, 397

19   U.S. 759, 771 (1970)). With respect to *Strickland's* prejudice requirement, "the defendant

20   must show that there is a reasonable probability that, but for counsel's errors, he would

21   not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (footnote

22

1   omitted). A "reasonable probability" is "a probability sufficient to undermine confidence

2   in the outcome." *Strickland*, 466 U.S. at 694.

3       A defendant has the right to effective assistance of counsel during plea bargain

4   negotiations. *Missouri v. Frye*, 566 U.S. 134, 144–145 (2012). Counsel who misadvises a

5   defendant about the law or who improperly coerces a defendant to accept a plea bargain

6   may be found deficient. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("If a plea

7   bargain has been offered, a defendant has the right to effective assistance of counsel in

8   considering whether to accept it.").

9       The Court again agrees with the Government. The § 924(c) "split in authority" to

10   which Chipman seems to refer applies to convictions based on the possession of a firearm

11   in furtherance of a "crime of violence." *See United States v. Davis*, 139 S. Ct. 2319, 2336

12   (2019). Chipman's conviction is based on the possession of a firearm in furtherance of a

13   drug trafficking crime. Thus, Chipman has not raised facts to suggest that her counsel

14   failed to properly investigate and research her § 924(c) charge.

15       Similarly, all the facts presented suggest that there was sufficient basis to convict

16   Chipman of the § 924(c) charge. While she may not have been present at the controlled

17   buys, that again does not defeat the fact that she admitted to being involved in a drug

18   trafficking conspiracy over several months. Chipman also repeatedly admitted that she

19   used her firearm in furtherance of that drug trafficking conspiracy. She has presented no

20   facts to suggest that counsel was deficient in challenging her § 924(c) charge.

21       For these same reasons, counsel was not ineffective in recommending that

22   Chipman plead guilty. Chipman admitted to the § 924(c) charge before counsel was even

1    involved in the case and, thus, from counsel's perspective at the time, it was reasonable to

2    recommend that Chipman plead guilty to the charge.

3          Chipman's claim based on ineffective assistance of counsel is therefore DENIED.

4    **E.      Certificate of Appealability**

5          A defendant may not appeal a decision denying a motion under § 2255 without

6    obtaining a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). The decision

7    to grant a COA must be made by the district judge. Fed. R. App. P. 22(b)(1). To obtain a

8    COA, the petitioner must show "that jurists of reason would find it debatable whether the

9    petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*,

10   529 U.S. 473, 484 (2000). If the petitioner's claims are found procedurally defective, he

11   must show "that jurists of reason would find it debatable whether the district court was

12   correct in its procedural ruling." *Id.*

13         The Government argues that the Court should not issue a certificate of

14   appealability in this case because "Chipman has not advanced a colorable substantive

15   claim for relief, and many of her claims are procedurally defective as well." Dkt. 5 at 18.

16         The Court agrees that Chipman is not entitled to a COA.

17                              **III.   ORDER**

18         Therefore, it is hereby **ORDERED** that Brittany Nicole Chipman's Motion to

19   Vacate, Set Aside, or Correct Sentence, Dkt. 1, is **DENIED** and this case is **DISMISSED**

20   **with prejudice**.

21         The Clerk shall enter a JUDGMENT and close the case.

22   *//*

1 Dated this 23rd day of February, 2023.

2

3

4       BENJAMIN H. SETTLE
        United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 18